# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **ROBBIE L. STACY,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:05CV00100 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **COMMISSIONER OF** | ) | By: James P. Jones |
| **SOCIAL SECURITY,** | ) | Chief United States District Judge |
| | ) | |
| Defendant. | ) | |

*Mary C. Hendricks, Browing, Lamie, & Gilford, P.C., Lebanon, Virginia, for Plaintiff; Sara Bugbee Winn, Assistant United States Attorney, Roanoke, Virginia, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Robbie L. Stacy filed this action challenging the final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits, and for supplemental security income benefits under title II of the Social Security Act, 42 U.S.C.A. §§ 401-433, 1382 (West 2003 & Supp. 2006) ("Act"). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g).

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.*

The plaintiff initially filed for disability benefits on May 14, 2003, claiming disability since November 12, 2002. He alleges disability resulting from arthritis, nerves, depression, panic attacks, sedating medications, and a heart problem. This claim was denied on February 10, 2005. By order of the Appeals Council, the plaintiff's case was remanded in order for the administrative law judge ("ALJ") to obtain and evaluate additional medical records. A supplemental hearing was held on July 14, 2005. By a decision dated August 9, 2005, the plaintiff's claim was again denied by the ALJ. The Appeals Council subsequently denied review of the ALJ's decision. (R. at 9-12.) The parties have filed cross-motions for summary judgment and have fully briefed the issues. The case is now ripe for decision.

II.

The plaintiff was born on April 5, 1956, and was forty-nine years old at the time of the ALJ's decision.  He holds a general equivalency diploma, and has past relevant work experience as a delivery truck driver and a mobile home repairman. (R. at 137.)

According to the record, the plaintiff sought treatment from Ramesh Kabaria, M.D., on November 14, 2002, for injuries suffered from a slip and fall accident.  (R. at 194.)  The plaintiff complained of diffuse left and right-sided pain.  X rays of the thoracic spine indicated no fracture, dislocation, or other type of bone injury.  (*Id.*) The plaintiff was seen again by Dr. Kabaria on November 21, 2002.  (R. at 193.) During this examination, he complained of continued low back pain between the shoulder blades and right knee.  (*Id.*)  Dr. Kabaria noted the plaintiff had a decreased range of motion and marked tenderness in the thoracic spine and tenderness and limited range of motion of the right knee.  (*Id.*)  The plaintiff was referred for an orthopedic consultation.  (*Id.*)

On November 26, 2002, the plaintiff was examined by Dr. Francisco Caycedo, an orthopedist.  Dr. Caycedo noted the examination showed normal gait. (R. at 209-211.)  There was no crepitation or deformity of the shoulders, elbows, or writs.  (*Id.*) The plaintiff had a full range of motion in his hips, knees, and ankles.  (*Id.*)  The

plaintiff did have mild tenderness in the intrascapular area.  (*Id.*)  Physical therapy was recommended by Dr. Caycedo.  (*Id.*)

On December 10, 2002, the plaintiff again returned to Dr. Caycedo.  His condition remained largely unchanged and a continuing regiment of physical therapy was recommended.

On December 31, 2002, Dr. Caycedo reported that an MRI performed on the plaintiff showed no fractures, subluxation, or dislocation.  Dr. Caycedo also noted the plaintiff's disc were in good condition.  (R. at 208.)  After a normal examination, the plaintiff was released for work with full activities and without any limitations.  (*Id.*)

On February 17, 2003, Dr. Kabaria noted that the plaintiff complained of pain in the knees and thoracic spine.  (R. at 192.)  Dr. Kabaria also remarked that the plaintiff's polyarthralgia was responding to Vioxx therapy.  (*Id.*)  On August 26, 2003, the plaintiff returned to Dr. Kabaria and reported that his condition was stable and that he had discontinued taking his Vioxx.  (R. at 191.)

On September 15, 2003, the plaintiff visited Dr. Caycedo and reported that he still had some symptoms, but that those symptoms were not occurring every day.  (R. at 20.) Dr. Caycedo opined that the plaintiff had a normal gait, normal strength of the upper and lower extremities, and normal reflexes in the biceps and triceps.  (*Id.*)  Dr.

Caycedo maintained the opinion that the plaintiff was able to continue with a full level of activities with no restrictions. (*Id.*)

On October 29, 2003, the plaintiff was examined by Morgan Lorio, M.D., in regard to a Worker's Compensation claim. (R. at 285-86.) Dr. Lorio also opined that the MRI performed on the plaintiff was normal. (*Id.*) However, Dr. Lorio believed that the November 14, 2002 X rays of the thoracic spine showed a degenerative curve which did not meet scoliotic criteria but was degenerative scoliosis. (*Id.*) Dr. Lorio also noted the plaintiff had a normal gait, intact bilateral pulses, normal motor strength, no tenderness or spasm of the cervical spine, and normal motor sensory at C5-C8-T1. (*Id.*) A straight leg raising test was also determined to be negative. Dr. Lorio recommended the plaintiff continue a conservative treatment and unchanged work status restrictions. (*Id.*)

Dr. Kabarai also treated the plaintiff for low back pain on March 3, 2004 and April 7, 2004. (R. at 287.) During these visits, the plaintiff reported that his low back pain was stabilized by his use of Bextra. (*Id.*)

At various times, the plaintiff also sought treatment for symptoms of anxiety and depression. However, on April 7, 2004, the plaintiff's last documented visit to Dr. Kabaria, he reported his anxiety was stable. (*Id.*)

The record indicates that Nasreen R. Dar, M.D., served as the plaintiff's treating psychiatrist from April 31, 1999, through April 26, 2005. (R. at 177-90, 289-91, 294-95.) Dr. Dar's treatment notes record a variety of limited observations regarding the plaintiff's symptoms and the medications prescribed to treat those symptoms. However, on the whole, the notes are rather sparse and fail to describe any diagnostic or medical testing conducted on the plaintiff during a six year period.

Dr. Dar found that the plaintiff's stress and concentration difficulties left him with no ability to relate to co-workers, no ability to deal with work stresses, and no ability to maintain attention or concentration. (R. at 290-91.) From the record, there appears to be a complete absence of any diagnostic or medical testing utilized by Dr. Dar to support her opinions regarding the plaintiff's physical and mental capabilities and limitations.

The plaintiff was seen by Rudy Flora of Life Recovery on January 7, 2003, with a diagnosis of major depressive disorder, pain disorder, and generalized anxiety disorder. (R. at 234.) The plaintiff was treated by Life Recovery through February 26, 2003. The records from Life Recovery reveal that the plaintiff described symptoms of panic attacks, crying, suicidal ideation, and poor sleep. Diagnosis from Life Recovery included Major Depressive Disorder and Panic Disorder. (R. at 230-34.)

On August 24, 2004, the plaintiff was examined by Kathy J. Miller, M.E.d., a licensed psychological examiner. (R. at 266-73.) Although Ms. Miller found that the plaintiff to have a global assessment of function score of fifty-five, she found that the plaintiff had a fair ability to understand, remember and carry out complex job instructions; she also found that he had a good ability to understand, remember and carry out detailed, but not complex instructions, as well as simple job instructions. (R. at 271-73.)

The plaintiff was also seen by Dr. Sharat K. Narayanan on June 7, 2005, and July 8, 2005. In the records of these visits, there are no definitive complaints or recorded observations of symptoms consistent with depression or other mental impairments. However, Dr. Narayanan assessed the plaintiff as suffering from thoracic spinal pain, bilateral knee pain, anxiety disorder, depression, dyspepsia, and external hemorrhoids. (R. at 304.)

Dr. Norman E. Hankins testified as a vocational expert before the ALJ. When asked to consider a hypothetical individual with the plaintiff's relevant restrictions and impairments, Dr. Hankins testified that such an individual could perform a number of jobs in the national economy. In particular, he cited the job of delivery truck driver as a position that could be performed. Furthermore, the ALJ determined

that the plaintiff was not disabled because he retained the residual functional capacity for medium work and could return to past relevant work.

The record also details in length a number of the plaintiff's daily activities. The plaintiff uses his computer frequently to browse the internet, make internet purchases, and email friends and relatives. (R. at 59, 79.) The plaintiff also recounted that he continues to drive his car to the store and doctor's office. (R. at 78, 154.) He also is able to mow his lawn with a riding lawn mower. (R. at 155.) He also testified at the administrative hearing before the ALJ that he spends up to thirty minutes a day preparing meals for his wife. (R. at 79.) Furthermore, the plaintiff described having the energy and ability to read three to five nights a week for over a hour at a time. (R. at 156.)

Based upon medical evidence and the testimony of the vocational expert, the ALJ determined that the plaintiff was not under a disability as defined by the Act.

III

The issue presented in this case is whether there was substantial evidence to support the ALJ's finding that the plaintiff did not suffer from a disability. In particular, whether in making his findings the ALJ erred by rejecting the opinion of Dr. Dar, one of the plaintiff's treating physicians.

A claimant must establish that there is some medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity in order to be classified as disabled. 42 U.S.C.A. § 423(d)(2)(A).

The Commissioner applies a five-step sequential evaluation process when assessing an applicant's disability claim. The Commissioner considers, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform other work present in the national economy. *See* 20 C.F.R. § 404.1520 (2006). If it is determined at any point in the five-step analysis that the claimant is not disabled, then the inquiry immediately ceases. *Id*. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987).

The plaintiff argues that the ALJ erred in finding that he did not suffer from a severe mental impairment,[1] and that the ALJ erred in making a determination regarding his residual functional capacity. However, the decision of the ALJ must

---

[1] The plaintiff also argues that the ALJ erred in finding that he did not meet the listing for affective disorder found in 20 C.F.R. Part 404, Subpart P, Appendix 1. However, this argument is without merit since the ALJ determined that the plaintiff did not suffer from a severe mental impairment. (R. at 23.) As such, he was not required to determine whether such impairment was severe enough to preclude gainful work by assessing whether it meets or equals those impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

-9-

be affirmed where there is substantial evidence to support such a decision. *Laws*, 368 F.2d at 642. As the record reflects, there was substantial evidence to support the ALJ's finding in this case.

"An impairment or combination of impairments is not severe if it does not significantly limit your ability to do basic work activities." 20 C.F.R. §§ 404.1521(a). "An impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (internal quotation omitted).

Taken in isolation, Dr. Dar's opinions and reports could support a finding that the plaintiff has a severe impairment. However, there was substantial evidence on the record to support the ALJ's finding that the plaintiff does not suffer from a severe impairment.

The opinion of a treating physician may be entitled to deference, but such an opinion is not necessarily controlling under the most recently promulgated regulations. Under 20 C.F.R. § 404.1527 (2006), a treating physician's opinion is entitled to more weight than the opinion of non-treating physician, but it is entitled to controlling weight only if it is "well-supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *See Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

The regulations also allow an ALJ to reject the opinions of medical sources if their findings are not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if those opinions are inconsistent with other substantial evidence on the record. 20 C.F.R. § 404.1527(d)(3)(4).

The ALJ was entitled to reject Dr. Dar's findings regarding the plaintiff's disability. In particular, the ALJ found that Dr. Dar's findings were not supported by her own treatment notes, the consultative psychological evaluation of Ms. Miller, or the other objective medical evidence on the record. (R. at 23.) Substantial evidence exists on the record to support the ALJ's finding that Dr. Dar's opinion regarding disability should not be credited. Dr. Kabaria's treatment notes suggest that the plaintiff's anxiety and depression were stable after the time he alleges the onset of disability.

Furthermore, from the consultative psychological evaluation performed on the plaintiff, it was determined that the plaintiff had a satisfactory or more than satisfactory ability to perform all work functions. (R. at 191, 271-73, 287.)

Dr. Dar's records fail to establish that she performed any "medically acceptable clinical and laboratory diagnostic techniques" aimed at understanding the plaintiff's

physical capabilities and limitations. The only records presented by Dr. Dar are sparse and merely reflect observations regarding the plaintiff's reported symptoms and the medications being prescribed to treat those symptoms.

Finally, the plaintiff's reported daily activities appear to contradict the findings of Dr. Dar and provide substantial evidence for the ALJ's decision. The plaintiff reported that he has the mental capacity to undertake a number of activities on a daily basis. In particular, the evidence demonstrates the plaintiff maintains the ability to concentrate enough to drive, cook meals on a regular basis, use a drive mower to mow his lawn, and conduct a number of activities on his computer via the internet. The ALJ was entitled to conclude these activities weigh against the plaintiff's claim that his impairments were more than just a slight abnormality. These activities constitute substantial evidence upon which the ALJ could have based his decision.

The medical and psychological evidence before the ALJ, the opinion of the vocational expert, and the daily activities reported by the plaintiff provided substantial evidence to support the ALJ's findings.

IV

The plaintiff next argues that the ALJ erred in making a determination regarding the plaintiff's residual functional capacity. This argument must fail since

there was substantial evidence on the record to support the ALJ's determination regarding the plaintiff's residual functional capacity.  As evidenced by his August 9, 2005 decision, the ALJ considered the plaintiff's complete medical history as well as his reported daily activities.  Again, although Dr. Dar's opinions, taken in isolation, may conflict with the ALJ's findings, the ALJ was entitled to find those opinions less than credible to the extent they conflicted with other evidence.

In this instance, the ALJ clearly analyzed the records of each medical professional that evaluated the plaintiff.  In particular, he considered the opinions of Dr. Caycedo, Dr. Dar, Ms. Miller, Dr. Lorio, and Dr. Narayaman.  As such, there was substantial evidence to support his determination regarding the plaintiff's residual functional capacity.

V

For the forgoing reasons, the plaintiff's motion for summary judgment will be denied, and the defendant's motion for summary judgment will be granted.

An appropriate final judgment will be entered.

DATED: February 1, 2007

/s/ JAMES P. JONES
Chief United States District Judge